**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LORI HOWARD,

        *Plaintiff*,

v.

SHIFTPIXY, INC.,

        *Defendant*.

Civil Action No. 20-17631

**OPINION**

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiff seeks to recover certain compensation from her former employer. Presently before the Court is Defendant's motion for summary judgment, D.E. 46, and Plaintiff's cross-motion to stay enforcement of any award, D.E. 58. Plaintiff opposed Defendant's motion, D.E. 58, and Defendant filed a reply brief in further support of its motion and in opposition to Plaintiff's cross-motion, D.E. 59. The Court reviewed all submissions[1] made in support and opposition to the motions and considered the motions without oral argument pursuant to Fed. R.

---

[1] The Court refers to Defendant's brief in support of its motion, D.E. 46-1, as "Def. Br.", Plaintiff's brief in opposition and in support of her cross-motion, D.E. 58-5, as "Plf. Opp.", and Defendant's reply brief, D.E. 59, as "Def. Reply." In addition, the Court refers to Defendant's Statement of Material Facts Not in Dispute, D.E. 39-1, as "Def. SOMF"; Plaintiff's response to Def. SOMF, D.E. 42, as "Plf. SOMF"; and Defendant's Response to Plf. SOMF, D.E. 59-2, as "Def. Resp. SOMF."

Plaintiff filed a revised statement of material facts with her opposition brief. *See* D.E. 58-4. Plaintiff did not seek leave to file a revised statement of material facts. In granting Defendant leave to file its motion for summary judgment, this Court instructed that the parties "shall refer to, and not refile" their statement of material facts submitted in conjunction with Defendant's request for leave to file the motion. D.E. 44. Accordingly, the Court did not consider Plaintiff's revised statement of material facts in deciding the instant motion.

Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion for summary judgment is **GRANTED in part and DENIED in part**, and the motion to stay is **DENIED**.

## I.     FACTUAL BACKGROUND and PROCEDURAL HISTORY

Defendant Shiftpixy, Inc. ("Shiftpixy" or the "Company") is a staffing service provider for part-time workforce demands, primarily in the restaurant, hospitality, and maintenance service fields. Plf. SOMF ¶¶ 4-5. Defendant employed Plaintiff from May 2018 through December 2019. *Id.* ¶¶ 1-3. Before starting, Plaintiff interviewed and negotiated her salary with Steve Holmes. *Id.* ¶¶ 10, 16. Holmes was involved with hiring, firing, and negotiating compensation for key members of the sales department. Plf. SOMF ¶ 13. Holmes' business cards and email signature block also indicated that he was sales manager and co-founder of the Company. *Id.* ¶ 11. Defendant, however, maintains that Holmes' business cards never indicated that he was the sales manager, and any reference to this title in his email signature block was an error. Def. Resp. SOMF ¶ 11. Defendant further contends that Plaintiff misstates, among other things, Holmes' status within the Company. *Id.* Defendant maintains that Holmes was a co-founder, and during the relevant period, was a consultant to Shiftpixy. Def. SOMF ¶ 5; Def. Resp. SOMF ¶¶ 19-20. Defendant denies that Holmes was ever a Shiftpixy employee. Def. SOMF ¶ 5.

Plaintiff executed an offer letter from Defendant on April 10, 2018 (the "Offer Letter"). Among other things, the Offer Letter set forth Plaintiff's salary and commission structure. Plf. SOMF ¶ 17. A Shiftpixy representative also signed the Offer Letter on the same day. *See* Strand Cert., Ex. 1. From late March to April 9, however, Plaintiff and Holmes had conversations and exchanged drafts of an Addendum to the Offer Letter containing additional terms for Plaintiff's employment and compensation. Plf. SOMF ¶ 18. These additional negotiations included Plaintiff

receiving stock equal to twice her total annual compensation on a yearly basis (the "stock compensation") and the promise of "commissions for life" if her clients remained with the company, even after Plaintiff left the company. *Id.* ¶ 24. Plaintiff states that she and Holmes agreed to these components before Plaintiff added them to an Addendum she sent to Holmes on April 5th (the "April 5th Addendum"). *Id.* ¶ 26. According to Plaintiff, Holmes then sent her a marked-up copy of the April 5th Addendum with handwritten notes. The handwritten comments indicate that the Company accepted the "commissions for life" and the stock payout at a rate of twice her annual compensation, but the stock compensation could not be put into writing. *Id.* ¶¶ 29, 31. Mark Absher, Shiftpixy's General Counsel, made the handwritten notes. *Id.* ¶ 32; *see also* Def. Resp. SOMF ¶ 32.

Two documents entitled "Amendment to Offer of Employment," dated April 6th and April 9th, incorporate at least the lifetime commissions aspect of Plaintiff's negotiations with Holmes.[2] *See* Strand Cert., Ex. 6; Howard Decl., Exs. N, O. Plaintiff signed the April 9th version and emailed a copy to Defendant on April 10, shortly after executing the Offer Letter. *See* Howard Decl., Exs. O, Q. Defendant never countersigned the Amendment.

On August 21, 2019, Defendant "supplemented" Plaintiff's April 10 offer by giving Plaintiff an advance on her earned commissions. Strand Cert., Ex. 8. The August 21 Letter, however, provides that Plaintiff must repay the advance and that if Plaintiff's employment ends before full repayment, Defendant can deduct the outstanding amount from her final commissions. *Id.* Both parties signed this document. Defendant maintains that Plaintiff failed to repay her draw in full. Def. SOMF ¶ 41. Plaintiff states that Absher and Holmes both told her that her obligation

---

[2] Except for Plaintiff's start date at Shiftpixy, the April 6th and 9th documents appear to be the same. Howard Decl., Exs. N, O.

to repay was forgiven when Defendant sold part of its business. Plf. Resp. to Def. SOMF ¶ 41.

In 2020, Plaintiff filed her Complaint alleging that she is entitled to commissions for life and the stock compensation, asserting breach of contract, fraud, labor violations, and quasi-contract claims. Defendant removed the matter to this Court, D.E. 1, and then filed its Answer and Counterclaim. Through the Counterclaim, Defendant seeks to recover Plaintiff's unpaid commission advance through breach of contract and unjust enrichment claims. D.E. 6. On July 7, 2022, Defendant filed the instant motion for summary judgment as to all counts of the Complaint and its Counterclaim. D.E. 46. On September 15, 2022, Plaintiff filed her cross-motion seeking a stay, under Federal Rule of Civil Procedure 54, if the Court grants Defendant's motion for summary judgment as to the Counterclaims. D.E. 58.

## II.  SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

#### 1. Breach of Contract Claims (Counts Three and Four)

Defendant first argues that Plaintiff's contract-based claims fail as a matter of law because Plaintiff is attempting to enforce contract terms that do not exist. Defendant reasons that neither the Offer Letter nor August 21 agreement include the terms on which Plaintiff's breach of contract claims are based. Def. Br. at 4-10. Plaintiff counters that there is substantial evidence demonstrating that Defendant agreed to the stock compensation and lifetime commissions through

5

agreements outside of the Offer Letter. Plf. Opp. at 16-17.

To state a claim for breach of contract under New Jersey law,[3] a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)). Further, the implied covenant of good faith and fair dealing is a "component of every contract" that requires parties to a contract to act in "good faith[,]" that is, they must "adher[e] to community standards of decency, fairness, or reasonableness." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (internal citations omitted). To succeed on a claim for breach of the covenant of good faith and fair dealing, a party must prove that "(1) the [opposing party acted] in bad faith or with a malicious motive, (2) to deny the [party] some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009).

In interpreting a contract, a court must determine the intention of the parties as revealed by the language in the agreement. *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 65 (N.J. 2016) (citation omitted). To "discover the intention of the parties, and to determine whether a contract is ambiguous, courts may consider extrinsic evidence offered in support of conflicting

---

[3] Although neither party provides a choice of law analysis, both parties apply New Jersey law to support their arguments. Seeing no clear reason to deviate from the parties, the Court applies New Jersey law to decide the motions. *See Cole v. NIBCO, Inc.*, No. 13-7871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015) (explaining that because "Defendant suggests, and Plaintiffs do not dispute" which state law applies, "the Court will follow the lead of the parties and will not engage in a choice of law analysis"); *Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

interpretations." *Annese v. Bertoia Auctions & Appraisals, LLC*, No. A-2951-20, 2022 WL 1613144, at *4 (N.J. Super. Ct. App. Div. May 23, 2022) (citing *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006)).  Relevant evidence includes "an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." *Conway*, 901 A.2d at 347 (internal quotations and citation omitted).  Where "the contested provisions fall in that gray area, dismissal or summary judgment is improper." *Seaport Inlet Marina, LLC v. Connell*, No. 17-1908, 2017 WL 3981128, at *6 (D.N.J. Sept. 11, 2017) (internal quotation and citation omitted); *see also Annese*, 2022 WL 1613144, at *4 ("Resolution of ambiguity, if found, is a fact issue." (citation omitted)).

The Offer Letter contains an integration clause.  The Letter states that "[n]o oral representation contrary to this pay plan is contractually binding."  Strand Cert., Ex. 1 at 1. Generally, "the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." *Conway*, 901 A.2d at 346.  However, the parol evidence rule "does not even come into play until it is first determined what the true agreement of the parties is." *Garden State Plaza Corp. v. S.S. Kresge Co.*, 189 A.2d 448, 456 (N.J. App. Div. 1963).  As a result, a court may consider "all of the relevant evidence that will assist in determining the intent and meaning of the contract" even if a contract term is not ambiguous.  *Conway*, 901 A.2d at 346. This includes using extrinsic evidence that addresses events before the fully integrated contract was executed.  *See Garden State Plaza Corp.*, 189 A.2d at 456 ("Repeatedly have our highest courts used negotiations antecedent to integration in arriving at and effectuating the specific intent of the parties, subject only to the caution that the construction adjudicated be compatible with the contractual language.").

7

Plaintiff maintains that through her pre-employment discussions with Holmes, she negotiated the stock compensation and lifetime commissions. Plf. SOMF ¶ 24. At a minimum, the Offer Letter addresses the amount of Plaintiff's commissions but not how long Plaintiff is entitled to receive any earned commissions. Strand Cert., Ex. 1 at 1. As a result, the parties' intent as to the duration of Plaintiff's earned commissions is not clear from the four corners of the Offer Letter. Plaintiff, therefore, can rely on extrinsic evidence to assist the factfinder in determining the parties' intent as to lifetime commissions. As a result, there is a genuine dispute of material factual dispute as to whether Plaintiff is entitled to lifetime commissions. *See* Def. SOMF ¶¶ 18-20; Plf. SOMF ¶¶ 20-28.

Defendant responds that Holmes was a consultant with no authority to bind the Company. Def. Br. at 6. Prior to her employment, Howard interviewed with Holmes, Plf. SOMF ¶ 10, his email signature block indicated that he was a co-founder and sales manager, *id.* ¶ 11, and he was involved in Shiftpixy's operations, including hiring and firing employees, *id.* ¶¶ 11, 13-14. In fact, the Offer Letter states that Howard "will be reporting directly to Steve Holmes our Co-Founder." Strand Cert., Ex. 1 at 1. Although Defendant denies that Holmes was ever an employee, there is a genuine dispute of material fact as to whether Holmes had actual or apparent authority to bind Shiftpixy to the relevant terms.

Turning to the stock compensation, it is not addressed in the Offer Letter.[4] Plaintiff points to the employment Addendum, indicating that she drafted the April 5, 2018 Amendment and Defendant marked up and returned a draft of this document. Howard Decl., Ex. M. The April 5 document includes the terms of Plaintiff's alleged stock compensation, reflecting that Plaintiff

---

[4] After the pay plan discussion, there is a paragraph in the Offer Letter that discusses the option for Plaintiff to *purchase* shares of Company stock. Strand Cert., Ex. 1 at 2. This paragraph appears to be separate from Plaintiff's allegedly negotiated stock compensation.

8

"will receive 2x you [sic] total annually [sic] earnings in company stock" and a minimum of 25,000 shares annually. *Id.* Next to the 25,000-stock share line-item there is a handwritten note stating "separate addendum." *Id.* There is also a handwritten note stating "can't put this in writing" next to the double her annual earnings in stock line. *Id.*

Again, the integration clause in the Offer Letter provides that "[n]o oral representations contrary to this pay plan is contractually binding." Strand Cert., Ex. 1 at 1. But the April 5 Amendment with handwritten notes implies that the parties contemplated a separate, non-written agreement about additional compensation terms. Thus, this document creates a genuine issue of material fact as to whether the parties intended for the Offer Letter to be a fully integrated document regarding Plaintiff's compensation or if they intended for Plaintiff to receive additional compensation per an oral agreement. Consequently, Defendant's motion for summary judgment for the breach of contract claim is denied.

Finally, Defendant argues that the implied covenant claim must also be dismissed because it relies on the same allegations as the breach of contract claim. Def. Br. at 9. "[A] plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 75 n.10 (D.N.J. 2018) (internal citation omitted). But a plaintiff is permitted to assert alternative and inconsistent claims. Fed. R. Civ. P. 8(d). Given the Court's conclusion that there are genuine disputes of material fact as to the terms of Plaintiff's employment agreement, the Court cannot determine whether the conduct at issue is even governed by an express contract. As a result, Plaintiff is permitted to proceed with both her breach of contract and implied covenant claims at this time. Plaintiff, however, will not be permitted to recover for both claims

9

if they are ultimately duplicative. *China Falcon Flying Ltd.*, 329 F. Supp. 3d at 75 n.10. Accordingly, Defendant's motion for summary judgment is denied with respect to the implied covenant claim.

### 2. Fraud Based Claims (Counts One and Two)

Next, Defendant argues that it is entitled to summary judgment for Plaintiff's fraud and negligent misrepresentation claims. To prevail on a claim for common law fraud, a plaintiff must prove the following: (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). "The elements of negligent misrepresentation are essentially the same as those of common law fraud except negligent misrepresentation does not require scienter." *N.Y. Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co.,* No. 10-148, 2012 WL 209349, at *4 (D.N.J. Jan. 24, 2012) (citation omitted). To establish a claim of negligent misrepresentation, a plaintiff must prove that "'(1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of the plaintiff's damages.'" *Id.* (quoting *McCall v. Metro. Life. Ins. Co.,* 956 F. Supp. 1172, 1186 (D.N.J. 1996)).

Defendant acknowledges that Plaintiff attempted to negotiate additional terms for her compensation package but maintains that the Offer Letter forecloses Plaintiff's fraud and negligent misrepresentation claims. Defendant explains that with the Offer Letter, it was clear that Defendant rejected Plaintiff's additional compensation terms. Defendant also points to the integration clause in the Offer Letter to demonstrate that Defendant rejected Plaintiff's additional terms. Def. Br. 11-13. But Plaintiff emailed Defendant a signed copy of the April 9th Addendum,

10

the same day that the parties fully executed the Offer Letter. There is no evidence demonstrating that Defendant responded to this email, or otherwise told Plaintiff that she would not receive lifetime commissions or the stock compensation. Thus, Defendant provides no evidence, through the Offer Letter or otherwise, demonstrating that it outright rejected Plaintiff's additional terms. Further, as discussed, the handwritten notes on the April 5 amendment indicated that there would be a separate, oral agreement regarding the stock compensation. Accordingly, there is a genuine dispute of material fact as to whether the Offer Letter negates any material misrepresentations or false information provided by Shiftpixy during the parties' pre-employment negotiations.

Shiftpixy also argues that because of the integration clause, the parol evidence rule bars Plaintiff's fraud claim. Def. Br. at 13; Def. Reply at 7-9. But as discussed, there are genuine disputes of material fact as to whether the parties intended for the Offer Letter to be a fully integrated document. Finally, Defendant contends that it did not make any material misrepresentations because Plaintiff knew Holmes was an independent contractor with no authority to act on Shiftpixy's behalf. Def. Br. at 12. Again, as discussed, there is a genuine dispute of material factual as to whether Holmes had actual or apparent authority to bind Shiftpixy.

In sum, genuine disputes of material fact preclude granting summary judgment for Defendant as to Plaintiff's fraud and negligent misrepresentations claims. Defendant's motion for summary judgment is denied with respect to Counts One and Two.

### 3. Promissory and Equitable Estoppel Claims (Counts Eight and Ten)

Defendant also maintains that it is entitled to summary judgment for Plaintiff's promissory estoppel claim because Plaintiff fails to establish that Defendant made a clear and definite promise. Def. Br. at 14. To state a claim for promissory estoppel, a plaintiff must establish (1) a clear and definite promise, (2) made with the expectations that the promisee will rely on it, (3) reasonable

11

reliance, and (4) definite and substantial detriment. *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (citing *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 944 A.2d 1, 19 (N.J. 2008)).

Plaintiff contends that Defendant made promises regarding her stock compensation and commissions for life. Plf. Opp. at 21. The record is not clear as to who made the alleged promises. Plaintiff states that she and Holmes "discussed and negotiated several additional compensation components," Plf. SOMF ¶ 24, but that Howard drafted the additional compensation terms, *id.* ¶ 25. Holmes allegedly agreed to Howard's additional compensation terms after she memorialized them in writing. *Id.* ¶ 26. Plaintiff, however, also maintains that Absher first came up with the stock compensation concept for the entire sales team, which Holmes then communicated to Howard. *Id.* ¶ 33. Moreover, Holmes purportedly told Howard that she would receive the stock compensation subject to certain contingencies.[5] *Id.* ¶ 34. This is supported by Plaintiff's contention that Defendant promised other employees that they would also receive the stock compensation. *Id.* ¶ 42. Consequently, the Court cannot conclude as a matter of law that Defendant (through its representatives/agents) did not make any promises. Defendant's motion, therefore, is denied as to the promissory estoppel claim.

Equitable estoppel is a doctrine that "prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment." *Casamasino v. City of Jersey City*, 730 A.2d 287, 298 (N.J. 1999). To recover on a claim for equitable estoppel, a plaintiff must establish "(i) material misrepresentation, (ii) reasonable reliance upon the misrepresentation, and (iii) damages resulting from the misrepresentation." *Hein v. FDIC*, 88 F.3d 210, 221 (3d Cir.

---

[5] Holmes testified that certain events had to occur, including taking the company public, before the stock compensation could be included in Plaintiff's compensation package. Holmes testified that he communicated these contingencies to Plaintiff. Howard Decl., Ex. B at T84:9-24.

1996); *Knorr v. Smeal*, 178 N.J. 169, 178 (2003) ("[T]o establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment."). Here, Defendant maintains that Plaintiff did not materially rely on any misrepresentations because she continued to work at Shiftpixy after the Company rejected her additional compensation requests. Def. Br. at 16. But as discussed, it does not appear that Defendant provided any indication that Shiftpixy denied Plaintiff's compensation requests. And Plaintiff represents that during her employment, Defendant relied on the April 9th Amendment to resolve a dispute about Plaintiff's advances. Plf. SOMF ¶ 44. As a result, Defendant is also not entitled to summary judgment for the equitable estoppel claim.

Defendant also maintains that Plaintiff's estoppel claims must be dismissed because they are based on conduct that is governed by an express contract. Def. Br. at 16. Again, there are genuine issues of material fact as to whether an express contract governed the additional compensation terms. At this stage, Plaintiff may proceed with her estoppel and breach of contract claims. *See* Fed. R. Civ. P. 8(d).

### 4. Quasi Contract Claims (Counts Seven and Nine)

Next, Defendant contends that Plaintiff's claims for quantum meruit, unjust enrichment, money had and received, and conversion fail because the employment agreements cover the same subject matter. Def. Br. at 18; 21-22. For the same reasons discussed as to Plaintiff's estoppel claims, the Court disagrees.

Defendant also maintains that Plaintiff's quantum meruit, unjust enrichment, and money had and received claims substantively fail. *Id.* at 19-20. But Defendant once again argues that it is entitled to summary judgment because Shiftpixy never agreed to the additional compensation

that Plaintiff contends that she is entitled to receive. Def. Br. at 20. As discussed, there are genuine, material factual disputes that preclude granting Defendant's motion on these grounds.

### 5. State Labor Law Violations (Counts Five and Six)

In her Complaint, Plaintiff alleges that Shiftpixy violated New York and New Jersey labor laws. Compl. ¶¶ 67-75. Shiftpixy seeks summary judgment for both claims. Def. Br. at 21. Plaintiff does not address Defendant's argument as to the labor law violations. A court may deem a claim abandoned when a party moves for summary judgment and the party opposing summary judgment fails to address the argument in any way. *See, e.g.*, *Freeman v. Middle Twp. Bd. of Educ.*, No. 10-6024, 2012 WL 3715925, at *3 (D.N.J. Aug. 27, 2012) (viewing claims not addressed in opposition brief as waived); *see also Anderson*, 477 U.S. at 250 (explaining that to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party). Because Plaintiff provides no evidence to support a genuine dispute of material fact as to either of her labor law claims, the Court views both claims as waived by Plaintiff. Defendant's motion is granted as to Counts Five and Six.

### 6. Counterclaims

Defendant argues that it is entitled to summary judgment for its counterclaims. Defendant first asserts a breach of contract claim, alleging that Plaintiff breached the employment agreement because she failed to repay her advanced commissions. Def. Br. at 23-24. The parties do not appear to dispute that through August 21 Agreement, Plaintiff received an advance on her commissions. The August 21 Agreement further provides that if Plaintiff's employment with Defendant is terminated before she repays the advance, Defendant may deduct the unpaid amount from Plaintiff's final commission. *See* Strand Cert., Ex. 8. Plaintiff, however, maintains that

14

Absher and Holmes told her that her repayment obligations were forgiven. Plf. Resp. to Def. SOMF ¶ 41. Consequently, there is genuine dispute of material fact as to whether the repayment obligation remains operative. Moreover, given the permissive language of the repayment provision of the August 21 Agreement, the Court cannot conclude as a matter of law that Plaintiff breached the August 21 Agreement by her failure to repay the outstanding amount of advanced commissions.

Defendant also asserts an unjust enrichment claim based on Plaintiff's failure to repay her advance. Def. Br. at 24. Given the factual disputes regarding the terms of Plaintiff's compensation with Defendant, the Court cannot determine as a matter of law whether Defendant was unjustly enriched by Plaintiff's failure to repay the advance or the amount of any unjust enrichment. Accordingly, Defendant's motion is also denied as to Defendant's unjust enrichment counterclaim.

### 7. Plaintiff's Cross-Motion

Finally, Plaintiff filed a cross-motion seeking to stay any judgment that may be entered as to Defendant's counterclaims. Plf. Opp. at 54. Because Defendant's motion is denied as to its counterclaims, Plaintiff's cross-motion is denied as moot.

### IV. CONCLUSION

For the reasons stated above, and for good cause shown, Defendant's motion for summary judgment (D.E. 46) is **GRANTED in part and DENIED in part**. Plaintiff's cross-motion to stay the enforcement of a judgment (D.E. 58) is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: March 7, 2023

John Michael Vazquez, U.S.D.J.

15